UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| UNITED STATES OF AMERICA, | * | |
| --- | --- | --- |
| | * | |
| | * | |
| v. | * | Criminal No. 09-10352-JLT |
| | * | |
| FOSTER L. STARKS, Jr., | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM and ORDER

September 5, 2012

TAURO, J.

I.　　Introduction

After a trial on the merits, ending October 20, 2011, Defendant was convicted by a jury of one count of being a felon in possession of a firearm and ammunition.[1] Presently at issue is Defendant's Motion for New Trial [#201]. After an evidentiary hearing on May 7, 2012, Defendant's motion was DENIED IN PART and DEFERRED IN PART, to enable the court to hear more evidence related to Defendant's claims of juror misconduct. After a second evidentiary hearing held on June 11, 2012, and for the reasons stated below, Defendant's Motion for New Trial [#201] is now DENIED in its entirety.

II.　　Background

On October 20, 2011, Defendant was convicted by a jury of his peers on one count of being a felon in possession of a firearm and ammunition.[2] The proof at trial showed that

---

[1]Jury Verdict [#193].

[2]Id.

Defendant had been arrested while driving with a suspended license, with a gun on the passenger seat of the car and a number of counterfeit oxycontin pills in the car's center console. The government's theory of the case included elements that suggested Defendant possessed the gun because he was involved in the drug trade, but Defendant was not charged with any drug offense.[3] In response to the Government's theory of the case, during voir dire, potential jurors were asked the following question, "[h]ave you or any member of your family had any problem with drugs of any type, any problem that you think might in any way affect your ability to decide this case fairly and impartially?"[4] The venire was also asked, as a matter of course, whether they knew anyone on the witness list of either party.[5] Defendant's witness list included an entry that listed "Dawne Young of Cambridge, Massachusetts," as a potential witness, but Ms. Young was never called as a witness at trial.[6]

Defendant asserts that he is entitled to a new trial because one of the jurors failed to disclose material information on voir dire.[7] In particular, Defendant asserts that Juror D failed to disclose first, that she had a brother who received multiple drug convictions before dying of a drug overdose, and second, that she knew Defendant's children and their mother – Defendant's ex-girlfriend – socially.[8] In order to determine a factual basis for these claims, the court held an

---

[3] See, e.g., Trial Tr. [#199] 19:8-10 (Government's Closing Arg.)

[4] Trial Tr. [#225] 77:1-5; Hearing Tr. June 11, 2012 [#243] 46:10-23.

[5] See Trial Tr. [#225] 54:10-16, 55:13-17.

[6] Def.'s Witness List [#109] (Listing Dawn [sic] Young of Cambridge).

[7] Def.'s Mot. for New Trial [#201] ¶¶ (b)-(e).

[8] Id.

2

initial evidentiary hearing on May 7, 2012, and continued on June 11, 2012. The court heard testimony from Defendant's son Foster Starks, III, Defendant's ex-girlfriend Dawne Young, Juror D's mother, and eventually Juror D herself.

In support of his Motion for New Trial, Defendant submitted two affidavits to the court. The first, by Defendant's son Foster Starks, III ("Dario"), stated that the affiant, when on the witness stand at trial, had recognized Juror D to be a friend of his aunt, and his cousin's godmother.[9] It also indicated that, to the best of his knowledge, Foster Starks, III believed that Juror D had a brother who had died of a drug overdose.[10] The second, by Defendant's ex-girlfriend Dawne Young, indicated that the affiant had known Juror D since approximately 1995, and that Juror D was a close friend of Ms. Young's sister.[11] Ms. Young's affidavit also indicated that she knew Juror D's brother had died of a drug overdose.[12] At the May 7, 2012 evidentiary hearing, Ms. Young, and Mr. Starks, III both offered testimony that was essentially consistent with the affidavits they had submitted earlier.

Ms. Young and her son Dario initially met Juror D around 1995, when they had all worshiped together at the Morning Star Baptist Church.[13] At that time, Juror D was best friends

---

[9]Starks, III Aff. [#204-2], ¶¶ 1-3

[10]Id., ¶ 5.

[11]Young Aff. [#204-1], ¶¶ 5-11.

[12]Id., ¶ 12.

[13]Hearing Tr. May 7, 2012 [#242] 33:19-34:15 (Testimony of Foster Starks, III), 55:9-56:11 (Testimony of Dawne Young).

3

with Ms. Young's sister Roxanne.[14]  Due to Juror D's friendship with Roxanne, Ms. Young and Dario had occasion to see Juror D at various social events.[15]  In 2000, Ms. Young and Dario (then approximately aged 14) moved to Florida, and did not return to Boston until 2011.[16]  During that time, Ms. Young saw Juror D only when she came to visit Roxanne in Florida in approximately 2003.[17]  Since Ms. Young and Dario returned to Boston, each has seen Juror D on a couple of occasions.  Ms. Young went school shopping with Juror D and Roxanne during the summer of 2011.[18]  Dario also saw Juror D as a birthday party that Roxanne threw for her daughter in July of 2011.[19]

Although his full name is Foster L. Starks, III, Dario has always gone by the name "Dario" to everyone, including friends and family.[20]  Dawne Young, furthermore, was never marred to Dario's father, Defendant Foster L. Starks, Jr., and has always gone by the name Dawne Young.[21]  Ms. Young testified that Dario's full given name was used during his baptism at the Morning Star

---

[14]Hearing Tr. (May 7, 2012), 32:24-33:1 (Testimony of Foster Starks, III).

[15]Id. at 34:13-35:12 (Testimony of Foster Starks, III).

[16]Id. at 35:13-36:4 (Testimony of Foster Starks, III).

[17]Id. at 70:18-71:3 (Testimony of Dawne Young).

[18]Id. at 84:18-85:4 (Testimony of Dawne Young).

[19]Id. at 36:15-37:2 (Testimony of Foster Starks, III).

[20]Id. at 42:24-43:14 (Testimony of Foster Starks, III), 68:23-25 (Testimony of Dawne Young).

[21] It should be noted that although Ms. Young and Defendant were never married, Dario did testify that he thought his parents may have been married and that his mother may, at some point, have gone by the name "Starks."  (Hearing Tr. (May 7, 2012), 43:22-44:4). This evidence was clearly rebutted by the testimony of Ms. Young herself. (Hearing Tr. (May 7, 2012), 68:8-22).

4

Baptist Church, and that she believed Juror D was present at that event.[22] Ms. Young also gave evidence suggesting that she believed Juror D knew that the father of her children was Foster Starks, and that he had been incarcerated for much of the children's lives.[23] It is undisputed that Juror D never met Defendant Foster Starks.

When called to testify, Juror D was questioned closely on the reasons she did not respond to the questions raised during voir dire, and the underlying facts that form the basis of Defendant's Motion. Juror D's testimony revealed that she had a brother, J, six years her junior, who had struggled with drug addiction and ultimately passed away in 2008.[24] Juror D indicated that her relationship with J had not been particularly close since J was in his teenage years and became involved with "drugs and . . . street life[.]"[25] She described her brother's drug addiction as "difficult," and as a "burden on the family."[26] Juror D testified that her brother had been arrested numerous times, and had spent much of his adolescent and adult life in and out of various institutional settings.[27] She indicated that her family tried to be as supportive as possible and would visit J wherever he was in custody.[28] Juror D testified that she was not aware that J had died of an overdose, but, rather, that she was told by her parents that he died of asphyxiation, but

---

[22] Hearing Tr. (May 7, 2012), 69:10-17 (Testimony of Dawne Young).

[23] Id. at 61:21-62:16 (Testimony of Dawne Young).

[24] See, Hearing Tr (June 11, 2012) 10:11-12, 23:10-11 (Testimony of Juror D).

[25] Id. at 9:14-10:18 (Testimony of Juror D).

[26] Id. at 10:20-11:10 (Testimony of Juror D).

[27] Id. at 14:13-16, 17:3-8 (Testimony of Juror D).

[28] Id. at 19:1-7 (Testimony of Juror D).

5

that there were drugs in his system.[29]

Juror D testified that she did not respond to the court's question regarding whether she, "or any member of [her] family had any problem with drugs of any type, any problem that . . . might in any way affect [her] ability to decide this case fairly and impartially[,]"[30] because her brother had passed away, and as a result she felt no need to respond.[31] She elaborated to say that she, "didn't associate the question [with her] brother because . . . it was in the past."[32] Juror D further testified that she did not believe there was anything about the subject of drugs that would bring up feelings for her, and that her feelings related to drugs were akin to those of a "normal person."[33] She also stated that her brother's death did not change her feelings about drugs generally, and that she didn't believe her brother's troubles would affect her role as a juror.[34]

Juror D also affirmed that she is friends with Roxanne, and has been for about the past fifteen years.[35] She testified that she knew Dawne Young, Roxanne's sister, through her friendship with Roxanne.[36] Juror D also knew Dawne Young's sons when they were younger

---

[29]Id. at 20:1-16 (Testimony of Juror D).

[30]Trial Tr. [#225] 77:1-5.

[31]Hearing Tr. (June 11, 2012), 25:21-26:6 (Testimony of Juror D).

[32]Id. at 28:19-21 (Testimony of Juror D).

[33]Id. at 28:22-29:1, 34:22-25 (Testimony of Juror D).

[34]Id. at 35:8-36:5, 48:5-12 (Testimony of Juror D).

[35]Id. at 36:15-37:10 (Testimony of Juror D).

[36]Id. at 38:5-12 (Testimony of Juror D).

6

because she would see them from time to time at Roxanne's house.[37] She indicated that the sons had been children when she had seen them[38] Juror D further stated that she was aware that Dawne Young had a son called Dario, and that she had seen Dawne Young in the summer of 2011.[39] She did not recall seeing Dario at Roxanne's daughter's birthday party, and also did not recall Dario's baptism when he was a child.[40] Juror D did not remember having any conversations with Dawne Young regarding the father of Young's children.[41] Juror D's testimony reflected that her relationship was primarily with Roxanne, and that her contact with Young was solely as a result of that friendship.[42] Juror D stated that she did not know that Dawne Young raised her children alone, and that she also did not know why Dawne Young was raising her grandchildren.[43]

During voir dire, the court read a list of names to the venire and asked the potential jurors whether they knew any person on the list.[44] The list of names included "Dawne Young" and "Foster Starks, III."[45] When asked why she didn't inform the court that she knew Dawne Young,

---

[37]Id. at 38:23-39:6 (Testimony of Juror D).

[38]Id. at 39:7-15 (Testimony of Juror D).

[39]Id. at 40:2-41:14 (Testimony of Juror D).

[40]Id. at 42:4-6, 43:5-8 (Testimony of Juror D).

[41]Id. at 43:11-21 (Testimony of Juror D).

[42]Id. at 49:7-10 (Testimony of Juror D).

[43]Id. at 49:11-8 (Testimony of Juror D).

[44]Trial Tr. [#225] 54:10-16, 55:13-17.

[45]Hearing Tr. (June 11, 2012) 68:21-69:1 (Testimony of Juror D).

7

Juror D responded that she "just didn't associate her being . . . the Dawne Young [she] knew."[46]
She also testified that she did not recognize Dario when he took the stand, or associate him with
Dawne Young.[47] She stated that she did not recognize the names of either Dawne Young or
Dario when they were read by the court, and she was unaware that Dario's last name was
"Starks".[48] Juror D also made clear that she would have alerted the court if she had recognized
either name.[49] She didn't recall seeing Dario at Roxanne's daughter's birthday party, and
although she and Dario both attended a party at Roxanne's house some months after the trial was
concluded, she did not recognize Dario as having testified at trial.[50] Juror D was calm and
collected throughout the hearing, and her answers on the stand were thoughtful and internally
consistent. After the conclusion of the June 11 hearing, the court took the matter under
advisement.

III.    Discussion

Under the Sixth Amendment, all criminal defendants are entitled to a "trial, by an impartial
jury."[51] An impartial jury is one that is, "capable and willing to decide the case solely on the

---

[46]Id. at 51:2-4 (Testimony of Juror D).

[47]Id. at 53:6-11 (Testimony of Juror D).

[48]Id. at 69:12-70:1, 74:8-10 (Testimony of Juror D).

[49]Id. at 70:2-6 (Testimony of Juror D).

[50]Id. at 75:3-14, 54:5-11 (Testimony of Juror D).

[51]U.S. Const. Amend. VI, quoted in United States v. Sampson, 820 F. Supp. 2d 151, 161 (D. Mass. 2011).

8

evidence before it."[52] One of the mechanisms intended to ensure the existence of an impartial jury is the voir dire.[53] Where a juror provides inaccurate responses to voir dire questions, by giving either incorrect or incomplete answers to material questions, "a party claiming he was denied an impartial jury may obtain relief by showing actual bias or implied bias," or by satisfying the multi-factor test laid out by the Supreme Court in McDonough Power Equipment, Inc. v. Greenwood.[54] There, the Supreme Court found that:

> [T]o obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause. The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial.[55]

This court, in the case of United States v. Sampson, engaged in a searching analysis of the McDonough requirements. There, the court found that a party seeking a new trial pursuant to McDonough must prove by a preponderance of the evidence that:

> (1) A juror gave an inaccurate answer to a question that was asked on voir dire; (2) the question was material; (3) the inaccurate response was dishonest, meaning knowingly and intentionally false, rather than the result of a good faith misunderstanding or mistake; (4) the reasons for the knowingly and intentionally false response relate to the juror's ability to decide the particular case based solely on the evidence and, therefore, call into question the juror's ability to be impartial; and (5)

---

[52] McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 554 (1984) (quoting Smith v. Phillips, 455 U.S. 209, 217 (1982)).

[53] See, e.g., Smith, 455 U.S. at 217 (listing voir dire as one of the "safeguards of juror impartiality").

[54] Sampson, 820 F. Supp. 2d at 169.

[55] McDonough, 464 U.S. at 556.

9

> a correct response would have provided a valid basis for a challenge
> for cause and would have resulted in the excusal of the juror for case
> based on actual bias, implied bias, or inferable bias.[56]

In the present matter, a new trial is not required under McDonough because, the evidence presented does not demonstrate that either response was "dishonest, meaning knowingly and intentionally false, rather than the result of a goodfaith misunderstanding or mistake."[57] Defendant's first argument for disqualification under McDonough is Juror D's failure to disclose her brother's trouble with drugs, and death from a drug overdose.[58] Juror D testified that she did not believe she needed to answer the court's question regarding whether she, "or any member of [her] family had any problem with drugs of any type, any problem that . . . might in any way affect [her] ability to decide this case fairly and impartially[,]" because her brother's problems were in the past, and she didn't believe it would affect her ability to decide the case.[59] Because Juror D did not believe that her brother's trouble with drugs would affect her impartiality, her answer to the court's questions on voir dire cannot even be said to have been inaccurate. This argument for disqualification, therefore, fails the threshold inquiry under McDonough.[60]

The test laid out in McDonough "reflects the understanding that the implications of an

---

[56]Sampson, 820 F. Supp. 2d at 170-71 (citing McDonough, 464 U.S. at 556; Dall v. Coffin, 970 F.2d 964, 970 (1st Cir. 1992)).

[57]Sampson, 820 F. Supp. 2d at 170.

[58]See Def.'s Mot. for New Trial, ¶ (e).

[59]Hearing Tr. 2 (June 11, 2012) 5:21-26:6, 28:19-21, 35:8-36:5, 48:5-12 (Testimony of Juror D).

[60]See Sampson 820 F. Supp. 2d at 170-71 (citing McDonough, 820 F. Supp. 2d at 556; Dall, 970 F.2d at 970).

innocent error and a dishonest answer are different."[61]  This distinction is particularly important in evaluating Defendant's second basis for disqualification: that Juror D failed to disclose that she knew two of the individuals on Defendant's witness list.[62]  The two witnesses in question are Defendant's ex-girlfriend Dawne Young, and their son Foster Starks, III, who goes by the name Dario.  Juror D testified that she is friends with Ms. Young's sister Roxanne, and that she knows Ms. Young through Roxanne.[63]  She also testified that she did not know either Dario's given name, or the name of Dario's father.[64]  Because Juror D did not know Dario's given name, Foster Starks, III, there is no way that she could have told the court during voir dire that she knew him.  The evidence presented also reflects that Juror D had not seen Dario or Ms. Young regularly for a number of years, and that she did not recognize Dario when he testified at trial.[65]  When asked why she didn't come forward to say that she knew Ms. Young during voir dire, Juror D responded that she simply "didn't associate" the name Dawne Young with her friend's sister.[66]

The evidence presented falls far short of the type of, " knowingly and intentionally false," responses that the McDonough test is designed to protect against.  Because of the differences in the names of the individuals she knew, and Defendant's name, nothing in the proceedings alerted

---

[61]Sampson, 820 F. Supp. 2d at 172.

[62]Def.'s Mot. for New Trial, ¶¶ (b)-(d).

[63]Hearing Tr. (June 11, 2012) 36:15-21, 38:5-12 (Testimony of Juror D).

[64]Id. at 78:14-22 (Testimony of Juror D).

[65]See Hearing Tr. (May 7, 2012) 35:13-36:4 (Testimony of Foster Starks, III) (indicating that he and his mother had both lived in Florida between roughly 2000 and 2011).

[66]Hearing Tr. (June 11, 2012) 50:21-25 (Testimony of Juror D).

Juror D to the fact that she might be familiar with Defendant's extended family.[67] The record is devoid of any indication that Juror D, as a result of her friendship with Roxanne, had any prejudicial or unfavorable information about Defendant. It is also unclear what possible motive Juror D would have for failing to disclose that she knew either Dawne Young or Dario, or how those relationships could have biased her feelings toward Defendant such that she was unable to decide the case on the basis of the evidence presented at trial.[68] In light of the facts presented, it also has not been shown that Juror D's association with Dawne Young and Dario, if disclosed during the initial voir dire, would have resulted in her being excused for cause.[69]

Although relief is not appropriate under the McDonough analysis, Defendant may still prove actual or implied bias on the part of Juror D.[70] Actual bias is a question of fact, which may be shown either by a juror's "express admission,"[71] or by the judge based upon the juror's responses during voir dire.[72] By contrast, implied bias is "conclusively presumed as a matter of

---

[67]See id. at 70:15-18 (Testimony of Juror D) (indicating that the "names of Dawne Young and Foster Starks, III didn't register to [her] at all when they were read out.").

[68] It is unclear how friendship with Defendant's extended family would bias Juror D such that she would support Defendant's conviction at trial. Because Juror D's responses on voir dire, though inaccurate in part, were not dishonest, the court does not need inquire further into Juror D's possible motives.

[69]See Sampson, 820 F. Supp. 2d at 170-71.

[70]See Amirault v. Fair, 968 F.2d 1404, 1405-06 & n.2 (1st Cir. 1992).

[71]Skaggs v. Otis Elevator Co., 164 F.3d 511, 516 (10th Cir. 1998) (citing United States v. Wood, 299 U.S. 123, 133 (1936)).

[72]United States v. Torres, 128 F.3d 38, 43 (citing Rosales-Lopez v. United States, 451 U.S. 182, 188 (1981)).

12

law,"[73] and "is attributed to a prospective juror regardless of actual partiality."[74] The implied bias inquiry asks, "whether an average person in the position of the juror in controversy would be prejudiced."[75] A finding of implied bias should only be made in "'extreme situations where the relationship between a prospective juror and some aspect of the litigation is such that it is highly unlikely that the average person could remain impartial in his deliberations under the circumstances.'"[76] Bias has been implied in criminal cases where the challenged juror had experiences that involved similarities with the criminal conduct charged in the case.[77]

Both actual and implied bias require a high level of proof, and neither finding is supported in this case. A finding of actual bias is completely unsupported by the record. Juror D did not admit to bias at any time, and the evidence presented, as set forth above, cannot be said to show "actual partiality."[78] A determination that Juror D must be disqualified due to the existence of implied bias is similarly unwarranted. The record shows that she did not know Defendant, and did not have a close relationship with either Dawne Young or Dario. The testimony does demonstrate that Juror D occasionally saw Dawne Young and Dario at social occasions hosted by her friend Roxanne, but that those relationships were not of a nature that allowed Juror D to

---

[73]Wood, 299 U.S. at 133.

[74]Id. at 134.

[75]Torres, 128 F.3d at 45 (citing United States v. Haynes, 398 F.2d 980, 984 (2d Cir. 1968)).

[76]Sanders v. Norris, 529 F.3d 787, 792 (8th Cir. 2008) (quoting Person v. Miller, 854 F.2d 656, 664 (4th Cir. 1988)).

[77]Sampson, 820 F. Supp. 2d at 164 (citing Skaggs, 164 F.3d at 517).

[78]See Sampson, 820 F. Supp. 2d at 163 (quoting Torres, 128 F.3d at 43).

13

acquire any information about Defendant, Defendant's criminal history, or Defendant's familial relationships. Indeed, Juror D did not know Dario's last name, or that of Dawne Young's children's father. Under these circumstances, it cannot be said that the circumstances create "too great a risk" of affecting Juror D's decision making process.[79]

Because Juror D was not wilfully dishonest during voir dire, and because the record falls far short of supporting a finding of either actual or implied bias, Defendant has not made the requisite showing to entitle him to a new trial on the ground of juror bias or misconduct.

III. Conclusion

For the reasons given above, Defendant's Motion for New Trial [#201] is DENIED. A sentencing date will issue.


IT IS SO ORDERED.


    /s/ Joseph L. Tauro
United States District Judge

---

[79] Fields v. Brown, 503 F.3d 755, 806 (9th Cir. 2007).